And we'll move to the last case for the morning, Hickman v. Spirit of Athens at Alabama. So we'll hear first from Mr. Mistando. Yes, Your Honor. Thank you. May it please the Court, my name is D'Anthony Mistando and I am representing the plaintiffs' appellants Dana Hickman and Robin Hines. I'd like to cover two main points today. First, I'd like to discuss the proper standard for evaluating whether a plaintiff is engaged in protected activity in the district court's misapplication of the reasonable belief standard. And two, direct the court's attention to support in the record which was not mentioned in the district court's decision for the appellant's reasonable belief the defendant was defrauding the U.S. government, sufficient to allow for the resumption of discovery and that ultimately would pose genuine issues of material fact that should be resolved by a jury. Here's the problem I have with your case. I don't buy your opponent's argument that, look, if they're mistaken, if the employee's mistaken about what's going on, that that could not give rise to this retaliation provision. But the problem is the conduct that the employee has to be concerned about, even though there may be a mistake of fact about what is actually happening, has to nevertheless be conduct that would violate the federal law. And it seems to me pretty clear here that the misuse of federal funds alone, which is what they believed was happening, would not violate the False Claims Act. Your Honor, my position is a little bit different in as much as we believe that you wouldn't have to have, you know, a False Claims Act violation to be covered by this, you know, it appears that federal money was being requested. There seems to be, though, an action under this section or other efforts to stop one or more violations of this subchapter. So even if your clients had a reasonable belief or an honest belief that there was some inappropriate conduct going on, it wouldn't be something that would constitute a violation of this subchapter. Let's use an example of like an antitrust conspiracy. I mean, there could be any number of illegal activities that aren't nevertheless violations of this subchapter and therefore wouldn't come within this retaliation provision. What am I missing? Well, I think, Your Honor, you're missing what Ms. Hickman and Ms. Hines were attempting to uncover. You know, they were on the track of determining, you know, whether these funds that were, you know, in their view were coming, were federal funds coming from the TVA were being used for inappropriate purposes or purposes. Yes, but that's not a violation of the Act. If the funds came with, you know, the conditions that they were supposed to be used to support the economic development of Athens and they weren't being used in that form or fashion. That's not a violation of the Act. What you have to prove is that there's been some kind of false claim made against the government. And there's no suggestion in this record whatsoever that they thought that's what had occurred. They were still in the process of determining that when they were fired. You know, they understood that the checks were coming from the TVA. They understood that the TVA was a federal entity. They were told by two county commissioners that this was federal funds. And it was common knowledge that the individuals, that it was common knowledge among the individuals who were directors of the State of Athens understood the money to be federal. They were in the process of determining what that, what those uses were. And they were putting the pieces of the puzzle together. And before they could do that is when they were terminated. There, and I don't, I don't agree that there's no potential for there to be a false claim. And I don't think that they're under, you know, our reading of Fanslow and other cases that deal with this that you need to have that. What, what false claim did your, do you say your client, or did the complaint allege that your clients believe that Spirit of Athens, Alabama had made to the federal government? Well, they weren't able, they did not indicate that there was a false claim made. But we don't believe that's the standard that they have to assert that there was a false claim made. What do you think that they needed to assert? They had to assert, you know, that there was a possible or the employer might violate the FCA through this process. Do they have any, do they have any, any specifics about what they thought the employer might be doing that violated the FCA? They believe that the employer was misappropriating funds and siphoning it for certain board members' personal use. Yeah, but that's a mis-spending funds, that's not making a false claim, is it? No, it's not, Your Honor. But, you know, we were given limited discovery in the case on the nature of the funds of Spirit of Athens that it received from the Tennessee Valley Authority. We were, we were provided, you know, a narrow scope for discovery, and we're requesting that that discovery be allowed to resume. So I think the problem is that... Go ahead, go ahead. I was just going to say, I think the problem is that the False Claims Act doesn't allow you to do discovery first to figure out what the false claim might have been. You need to, your clients would have already needed to have in mind the False Claims Act violation. Your Honor... It sounds like, it sounds like you want time to look for that violation rather than assert the violation. Your Honor, this isn't a key-tam, this isn't a False Claims Act case. This is, you know, retaliation for looking into things that they believed, you know, were potential violations of the False Claims Act. Those are, those are two, two different avenues, in our view. All right, thank you. Mr. Mistanda, you've saved a few minutes for rebuttal. We'll hear from, as I understand it, you've agreed to split your time with your amicus, Mr. Maher. I have, Your Honor, yes. Ms. DeMar? Thank you, Your Honor. May it please the Court, my name is Jacqueline DeMar. I'm here representing Taxpayers Against Fraud Education Fund on behalf of the plaintiffs' appellants. Just to address some of the discussion that just took place, I think that the District Court got sidetracked a little bit in the same way, kind of concentrating on what is required to prove a False Claims Act violation rather than what is required to prove a retaliation claim. And, you know, a regular employee, a similar, a regular layperson isn't going to know the ins and outs of the False Claims Act. They're not an attorney, they're not maybe versed in this. And so, when they see what they believe are TVA federal funds being passed through the county, and there was a request for that money in the annual contract that the District of Athens signed to a layperson, that looks like misuse of federal money. So, I just wanted to... Well, you know, so if the employee thinks that their employer is engaged in a RICO conspiracy, or, you know, some kind of racketeering activity, or price fixing, and they have the mistaken belief that that somehow violates the False Claims Act, they can, if they get fired, they can sue for retaliation? If that belief was reasonable, if other employees in the same situation would also believe that. In this case, all of the board members and many other people in the county referred to TVA funds as federal funds, considered them federal funds, and it would be reasonable for any similarly situated employee to believe that the funds were federal. In a case where there was a RICO allegation or something like that, you know, it may not be reasonable at all to believe that those things were related. The language that matters here, Ms. DeMario, I think you agree, 31 U.S.C. 3730 H1 is whether these employees were engaged in other efforts to stop one or more violations of this subject, right? Right. So I think the retaliation... How could an effort to stop a misuse of federal funds without any allegation that there's been any kind of false claim be an effort to stop a violation of this subject? I think an explicit false claim isn't required, and, you know, by requesting... They could be mistaken about whether, in fact, there has been a false claim. They could have an honest mistake of fact about what has happened, and their efforts could still be in pursuit of stopping what they believe to be a violation of the subchapter. But I don't understand how misuse of federal funds, which is what they believed was happening, can come within the scope of other efforts to stop one or more violations of this subchapter, because you agree, right? Misuse of federal funds by itself doesn't violate this subchapter, right? Right. I mean, but if you've made... If you've been granted federal funds... If you've been granted federal funds... If you've made a... I mean, in this case, it's not that they have... I don't think that they'd have to... The focus on the claim is misplaced. The... I don't believe that the plaintiffs had to know that the... that the spirit of Athens had to make a specific claim to the government in order for them to have a reasonable belief that fraud was being committed. They might be mistaken about what law it is that it violates. If what they allege is that they... Let's say, for example, that they thought the submission of a false claim to the government violated the Sherman Act. Their efforts to stop that from occurring, if that's what they reasonably believed was going on, the submission of a false claim to the government, would be something that comes within the scope of this provision. Right? Even though they're mistaken about what law it violates. But it still has to be a concern about the submission of a false claim. Right, but I... And I believe that the plaintiffs here were concerned about the submission of the false claim. No, there wasn't a direct claim made to the federal government, but there was a claim made for county money that the TDA funds were part of that were passed through via the county to... and granted to the spirit of Athens. And I believe that these types of regular people that are trying to bring allegations of fraud to light are prevented from doing so in the very early investigation stages. And this is what happened here. The plaintiffs were still investigating. They were prevented from investigating internally, and they were fired as soon as they requested an audit to understand what was actually going on with the money. And if that is the standard... So your time has expired? Okay, your time has expired, Mr. Marr. We're going to hear from Ms. Smith. Ms. Smith? I'm sorry, Your Honor. I appear to have not been unmuted. Okay. Well, good morning, and may it please the Court. My name is Lauren Smith, and I represent the Apple Lee Spirit of Athens, Alabama, which is a nonprofit organization that has never received a dime of federal funds or made any claims on the federal government. Period. End of story. The appellants cannot overcome those two very crucial facts in this case. Now, before I address these arguments in more detail, I would like to quickly remind the Court about the purpose behind the False Claims Act. It was enacted in the middle of the Civil War to expressly address the rampant fraud that was being perpetuated against the federal government. It does not protect state governments. It does not protect local governments. Congress did not extend the False Claims Act at any time to protect against fraud against any entity other than the federal government. And the anti-retaliation provision, as Your Honor has correctly pointed out, is part of this False Claims Act. Let me ask my question. Your position would be the same regardless of which standard is to be applied and regardless of whether federal funds were actually involved, right? Yes, sir, that's correct. And whether this Court applies the distinct possibility standard or the reasonable belief standard, the spirit of Athens prevails because, for two reasons. First, that there was absolutely no claim made at any time to the federal government. And appellants even acknowledge that during their... Let's say for a moment, Ms. Smith, that the employees thought that a claim had been made, a false claim had been made to the federal government. They were wrong. They were mistaken. But that's what they thought. And they were trying to stop that. They have a mistake of fact about what's happening, but that's what they think is happening. That would come within the scope of the provision, wouldn't it? Your Honor, here we have a threshold question that must be answered first, which is, are there federal funds implicated? And the answer here is no. And the second threshold question is whether or not the employer has made a claim. I don't understand why under the text of this statute, the retaliation provision, that's what we have to determine first. What we have to figure out is whether there were lawful acts done by the employee in furtherance of either an action under this section or other efforts to stop one or more violations of this subchapter. So if they're engaged in an effort to stop the submission of a false claim against the government, they would be protected from retaliation, even if they're mistaken about what's happening. That would be true, Your Honor, but that's not the situation that we have in this case. I agree with that. But what I don't want us to have to do is to determine whether, in fact, that this was a well-founded belief. It may be mistaken and reasonable, and an employee could be protected for trying to stop it. But the problem here is there's no allegation whatsoever, as I understand it, that these plaintiffs were trying to stop something that could be construed as a violation of the False Claims Act. That's correct, Your Honor, and there's a very good reason that the district court relied heavily on that element, the lack and absence of a claim on the federal government, and that's because the record evidence is completely devoid of any suggestion by plaintiffs, by the appellants, that they understood that a false claim had been submitted to the government. There had been some mention of the annual contracts with Limestone County. That specifically addressed the relationship between Spirit of Athens and Limestone County. It was not Spirit of Athens and any federal agency, no relationship between Spirit of Athens and TVA, for example. The checks that Spirit of Athens received were issued by Limestone County, drawn against Limestone County banks, signed by Limestone County representatives, and so there is absolutely no evidence in the record that the appellants believed at any time that Spirit of Athens had made an actual claim, had submitted a grant, had submitted some type of required accounting or reporting, nothing like that between Spirit of Athens and the federal government here. And absent an allegation that there was a false claim or a fraudulent claim against the federal government, there can be no protected activity and the appellant's retaliation claim fails for that reason. Now there have been appellants attempt to request this court to expand the scope of the False Claims Act here to really encompass more activity than just what would be designed to prevent fraud on the federal government. And here they have failed to identify any case law that would support an extension of the False Claims Act in the way that they have requested this court to do. There are no cases identified by appellants either here at the appellate level or at the trial court level that involved a viable retaliation claim under the False Claims Act in the absence of either the existence of federal funds or a claim against the federal government. The district court relied heavily on the McCrary v. Knox County case to determine that an essential element of any False Claims Act retaliation claim is that claim on the federal government. Some type of accounting, some type of application, some type of grant, some type of communication from the entity or the employer itself and the federal government. And here in this case we have nothing, absolutely nothing in the record to suggest that. And appellants even during their depositions could not identify anything aside from the annual contract, again, that was between the Spirit of Athens and Limestone County, which by its very nature is not a federal agency. What really matters is what they thought was going on. And as far as I can tell, the only thing that they expressed concern was occurring was what they believed was a misuse of federal funds, which by itself doesn't violate the Act. That's correct. That's correct. And so even if we take the appellant's belief at face value and assume that the appropriate standard is a reasonable belief standard, even if we do that, the Spirit of Athens still prevails here because even what the appellants thought they were doing, which was investigating the misuse of federal funds, that in and of itself does not implicate the protections of the False Claims Act. It does not implicate the protections of the anti-retaliation provision, which, again, is a part of the False Claims Act. And so we necessarily have to be looking to the False Claims Act to determine what the scope of that anti-retaliation provision is. And here, we simply have protected activity that falls outside of that scope. There's no claim here on the federal government. There's no federal hook that would have pulled the appellant's behavior, their activities within the protection of the False Claims Act, within the protection of... that there had been a false claim on the government. Would that satisfy the standard in your view? Even if there were actually no false claim, if they had a reasonable belief that there had been such a claim? If this court were to adopt the reasonable belief standard, that standard does allow for a reasonable but inaccurate belief that a violation of the False Claims Act has occurred. But here, we don't even have an implication that the False Claims Act would have come into play. We don't have any claims on the federal government. So the plaintiffs haven't even identified a belief in a particular claim. On this element, they don't... they haven't appropriately proved that they had even a good faith belief that a claim was made, let alone an objectively reasonable one. So even if the court were to adopt that reasonable belief standard, under these facts, under these circumstances, the plaintiffs cannot prevail on their retaliation. So we don't need to reach that question, do we? I mean, we don't need to reach the question of whether there has to be... you know, the standard is an honest and reasonable belief. I think that is the right standard. But because just taking what they say, what the plaintiffs say they thought was occurring here, you know, in its face, that's not a violation. That's right, Your Honor. Which standard to apply is not outcome determinative here. And the district court made that same decision. The district court did not reject the distinct possibility standard, but rather applied the reasonable belief standard, as requested by the plaintiffs, to show that even under that more lenient standard, that more favorable standard to the appellant, their claim failed as a matter of law. And that is because there was no claim, no good faith and no reasonable belief that Spirit of Athens had made a claim on the federal government. And absent that, absent that very essential element, there can be no retaliation, no viable retaliation claim under the False Claims Act. And for that reason, the district court not only applied the reasonable belief standard, but ultimately arrived at the correct conclusion, which is to grant summary judgment in favor of Spirit of Athens. All right. I think we understand your argument, Ms. Smith. Thank you very much. Thank you, Your Honor. Mr. Misando, you have three minutes for rebuttal. Yes, Your Honor. Thank you. What... The six minutes and time were terminated in the process of attempting to figure out what the use of these funds were. They saw checks coming in. They had the TVA written on them. These funds were passed through from the county. They were aware that the Spirit of Athens had a requirement to use the money to aid the operating expenses of the program, and that they were allowed to conduct audits. And that's what they were in the process of trying to do. They didn't know for certain whether that was something that had originated, you know, with the TVA and rolled down as a requirement for the use of the funds to be properly spent. But that's what they were in the process of trying to uncover, both, you know, with regard to what the expenditures were and what the requirements, you know, that they had to use that. Mis-expenditure of funds, though. How the funds were being used, mis-expenditure of funds, that's not a violation of the False Claims Act. It would depend, Your Honor, on where the requirements originated from. Say, if the requirement originated from the TVA, that these funds needed to be spent on, you know, operating expenses, or these funds, you know, had a certain earmark to them, they would satisfy what you're suggesting. There's no allegation here, though, that these employees thought anything about any of that. Your Honor, there is allegations that these funds were being improperly used. And there are, you know, there are allegations that, you know, they felt that the use was a violation of... the use of the funds was a violation, and that ultimately... Does Alabama have a whistleblower law of any sort, to your knowledge? No, ma'am. Alabama does not have its own version of the False Claims Act for state funds. Not yet. The legislature is considering that. But, you know, what we need to keep in mind, I think, that, you know, the retaliation provisions of the E-TAM, you know, the retaliation provisions of the False Claims Act are to protect those people who in good faith bring concerns about improper behavior to the attention of the employers or government or to remedy fraud. The district court, in ruling the way it did, at this procedural stage of the case, is requiring a whistleblower to prove the underlying substantive violation of the False Claims Act before it can receive protection. This is going to shield reporting of fraudulent activities and strip whistleblowers of the protections afforded by the FCA until they can prove a substantive violation. Whistleblowers are blacklisted in their industries. They have immense financial risks and emotional tolls for bringing these sorts of cases. And if they're not protected, then they're going to lose that desire to come forward and uncloak what they believe, you know, is fraud. By finding, you know, by allowing the plaintiffs to go forward, it really will, it's not going to broaden exposure, contrary to what defense counsel said, to any industry or anything open up, you know, Pandora's box. They were still bound by the reasonable belief that what they were doing was reasonable, and asserting that, leaving, you know, just an open liability is... Counsel, your time has expired. Okay, Mr. Mistando, I think we have your case. We will be in recess until tomorrow morning. Thank you. Thank you, Norris. Thanks, everyone.